[Civil No. 4172. Filed July 12, 1940.]

[104 Pac. (2d) 162.]

SALT RIVER VALLEY WATER USERS' ASSO-
CIATION, a Corporation, and F. P. WEAVER,
Appellants, v. PHYLLIS GREEN, by Her Guard-
ian Ad Litem, LLOYD F. GREEN, Appellee.

Messrs. Sloan, Scott & Green, for Appellants.

Mr. V. L. Hash, for Appellee.

LOCKWOOD, J.—This is an appeal by Salt River Valley Water Users' Association, a corporation, hereinafter called the company, and F. P. Weaver, hereinafter called defendant, from a judgment for $350 in favor of Phyllis Green, hereinafter called plaintiff, for damages suffered by her in an accident caused by the alleged negligence of defendant.

According to the evidence, interpreted in favor of plaintiff as far as reasonably possible, the facts are as follows: On the evening of July 25, 1938, a party of young people met at a store on East Van Buren Street, among them being plaintiff, one Jesse Easton and some half dozen others. While there they discussed the advisability of going out for the purpose of stealing watermelons. Easton and plaintiff announced that they would not participate in such an expedition, but the others agreed that they would undertake the job. Easton and plaintiff thereupon got into one automobile, their companions entered another, and the two cars drove off in different directions. The Easton car drove out Thomas Road to a swimming pool known as Thomas Beach, where its occupants remained for approximately half an hour. Thereafter they drove south on 32nd Street. By a strange coincidence it was a melon patch near by the other young people had chosen to rob, and the larceny had begun. The owner of the melon patch discovered this fact and opened fire with a shotgun on the actual thieves, two in number. These latter left the patch and hid on 32nd Street near a pile of the stolen melons. The wife of the farmer got in her car and started after the thieves. It was just at this time that the car driven by Easton turned down 32nd Street. One of the thieves named Barnum signaled him to stop, and the car was immediately slowed down to about five miles per hour, and Barnum jumped on its running board. Immediately thereafter Easton sped up

his car to approximately thirty miles per hour. The car in which the other young people who had agreed to steal the melons were riding passed them about this time, and raised a dust screen so thick that Easton could not see ahead of him. Notwithstanding this, he proceeded at the speed just mentioned and collided with the car of defendant, which was parked on the east side of 32nd Street. The collision threw plaintiff from the car in which she was riding, and as a result she received the injuries of which she complains. It is her contention that defendant was negligent in the manner in which he had parked his car.

The undisputed facts in regard to this parking are as follows: Defendant is a zanjero working for the company. While in the discharge of his duties he stopped his car on the west side of 32nd Street and got out to adjust a headgate near by. It was while he was performing this duty that the Easton car struck his parked car, and the accident resulted. The negligent act of defendant was alleged to be the parking of the car upon the traveled portion of the highway. The evidence showed conclusively that 32nd Street, at the point where the accident occurred, is not paved. The graded and graveled portion of the road, on which travel generally occurs, is thirty feet in width, and there is a space of approximately ten feet between the traveled portion of the road and a telephone pole east of the lateral which runs south on the west side of the road. The car was admittedly parked near the telephone pole, but there is a dispute as to its exact location. Witnesses for defendant place it entirely off the traveled portion of the highway. On the other hand, there was evidence offered on behalf of plaintiff from which the jury might infer that it was parked at least partially upon the traveled portion of the highway.

Section 1602, Revised Code of 1928, regulates parking on highways outside of business and residence districts. It reads as follows:

"Stopping on highways. No person shall leave a vehicle parked, whether attended or not, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to leave such vehicle standing off said portions of such highway; in no event shall any person leave a vehicle standing, whether attended or not, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle be left for free passage of other vehicles thereon. This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway to such extent that it is impossible to avoid temporarily leaving the vehicle in such position."

It will be seen that there are three separate situations governed thereby. The first is where it is practicable to park entirely off the main traveled portion of the highway; the second where it is not thus practicable; and the third when the vehicle parked is disabled so that it cannot be moved from the regular traveled portion of the highway. There is no contention that defendant's car came within the third classification. The undisputed evidence of plaintiff's own witnesses, taken into consideration with the only definite evidence as to the width of the traveled portion of the highway, shows conclusively that it did not fall within the second category. But it is contended that it comes within the first, in that it was practicable for defendant to leave his car parked entirely off the traveled portion of the highway.

We are of the opinion that the evidence shows it would have been practicable for defendant to have parked his car entirely off the traveled portion of

the highway at the place and time when the accident occurred, and such being the case, it is a question for the jury as to whether he did comply with the law in that respect.

The defense in this case was based upon two theories, (a) that defendant was not guilty of any negligence whatever, and that it was the sole negligence of the driver of the Easton car which caused plaintiff's injuries, and (b) that plaintiff was engaged in a joint enterprise with Easton and the other young people to violate the criminal law of the state, and such being the case, she cannot recover for injuries received by her in the course of the illegal attempt.

So far as the last defense is concerned, there can be no question that the law is as contended for by defendant. If, as a matter of law, plaintiff had agreed to assist in any manner in committing the crime of larceny and while in the execution of the joint design had been injured, she could not have recovered. But she and the witness Easton, while admitting that they knew their companions were about to commit the crime, deny most strenuously that they had any part or parcel therein and claim, in fact, that they had positively refused to join the enterprise. It is true there is abundant evidence in the record from which the jury might have drawn the conclusion that their testimony was false and that in fact they were participants in the plan, but we cannot say, as a matter of law, their story was impossible or even so incredible that no reasonable man could believe it, and such being the case, the action of the jury is binding upon this court.

The same situation exists in regard to the other defense. If the jurors believed the witnesses who testified that defendant's car was parked partially at least upon the traveled portion of the highway, and if it was practicable for defendant to have parked his

car entirely off the highway, then he was guilty of statutory negligence. It is further the law that even though Easton was guilty of contributory negligence by driving his car at the speed which he did under the circumstances testified to by him, since plaintiff, according to the verdict of the jury, had no control over the driving of the car, and was not engaged in the joint illegal enterprise with Easton and the admitted thieves but was merely a guest in Easton's car, the negligence of Easton could not in any case be imputed to her. *Kessler* v. *Davis,* 111 Kan. 515, 207 Pac. 799; *St. Louis & S. F. R. Co.* v. *Bell,* 58 Okl. 84, 159 Pac. 336, L. R. A. 1917A 543.

As was stated by counsel for the company and defendant, their sole contention on this appeal is that the evidence does not sustain the verdict. Regardless of what we might or might not have determined as jurors, as members of an appellate tribunal we are compelled to say that there is evidence in the case which if believed by the jury, as it evidently was, would sustain the verdict.

The judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.